VICE CHANCELLOR

# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: November 6, 2015
Date Decided: December 2, 2015

Joseph L. Christensen, Esquire
Joseph Christensen P.A.
921 Orange Street
Wilmington, DE 19801

Peter B. Andrews, Esquire
Craig J. Springer, Esquire
Andrews & Springer, LLC
3801 Kennett Pike
Building C, Suite 305
Wilmington, DE 19807

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Gina M. Serra, Esquire
Jeremy J. Riley, Esquire
Rigrodsky & Long, P.A.
Righter Parkway, Suite 120
Wilmington, DE 19803

Bradley D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, PC
222 Delaware Avenue
Wilmington, DE 19801

William M. Lafferty, Esquire
Ryan D. Stottmann, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Re: *In re Riverbed Technology, Inc. Stockholders Litigation*,
Consol. Civil Action No. 10484-VCG

Dear Counsel:

Early in my tenure on the bench, I described the realm of corporate law as not

just different from the arena of commonplace torts and contracts, but, in paraphrase

of L. P. Hartley, as a "foreign country."[1]  The foundation for that remark was apparent in my Memorandum Opinion[2] in this matter, in which I referred at length to the many agency problems that complicate the seemingly simple matter of deciding whether to approve the settlement of a run-of-the-mill merger litigation, and the odd position the Court finds itself in regarding such a settlement: it acts both as a kind of surrogate fiduciary for the class in evaluating the settlement and as a surrogate market in setting fee awards, with regard to which it must attempt to efficiently incentivize corporate litigation.

In addressing the settlement and the award of counsel fees in this matter, I had before me the presentations of learned counsel for the individual Plaintiffs and the Defendants, parties that were by that point no longer adversarial.  In addition, for the reasons set out at length in the Memorandum Opinion, those presentations, while no doubt erudite and sincere, were necessarily colored by the interests of counsel themselves and their clients, interests not indisputably aligned with the class for which I was charged with acting.  I also had the benefit of the presentation, in briefing and argument, of a stockholder–objector (the "Objector"), who provided a perspective aligned, presumably, with his fellow stockholders.  The previous

---

[1] *Dias v. Purches*, 2012 WL 689160, at *1 (Del. Ch. Mar. 5, 2012) (citing L. P. HARTLEY, THE GO-BETWEEN 17 (N.Y.RB Classics 2002) (1953)).

[2] *In re Riverbed Tech., Inc. S'holders Litig.*, 2015 WL 5458041 (Del. Ch. Sept. 17, 2015).

sentence is qualified because the Objector purchased his stock specifically with the aim of presenting his objection, which he has advanced generically in academic literature. His counsel here, however, presented objections specific to the settlement under consideration. The Objector seeks fees in connection with his opposition to the settlement, an opposition that, for reasons addressed fully in the Memorandum Opinion, was unsuccessful. I am again put in a situation that is unusual for a common-law judge: examining whether a party–objector, in the context of my consideration of a proposed settlement in a corporate class action, merits a fee award as having bestowed a benefit on the stockholder class *even where the objection is unsuccessful*; and, if so, determining an equitable award in light of the service rendered, mindful that such an award will simulate a market mechanism, encouraging or discouraging such objections in the future.

My consideration must start with the following premise: in considering class-action settlements, I must act, not just in a manner consistent with the law, but in light of the interests of the plaintiff class, which do not necessarily align with those of the individual plaintiffs and the defendants in the matter before me. In such a situation, while it is inaccurate to refer to the Court as a true fiduciary for the class, the Court must surely act in the interest of the class in evaluating a settlement, and its actions therefore are reminiscent of those of a fiduciary. In that light, the relationship of the Court with the stockholder class is unlike that with ordinary

3

litigants, who are entitled only to an impartial and thoughtful application of the law from the Court; in assessing a proposed settlement, the Court must act *on behalf of* the class. The class, therefore, has an interest in, and may be benefitted by, submissions that aid the Court in this function, in a way that is fundamentally different from the interest of an individual litigant in the aid provided to the Court by an amicus, for example, no matter how helpful the Court may find such assistance. In other words, the effect of an amicus submission is to assist the Court in reaching the correct legal result, whereas the effect of an objector's submission in this context, if it is helpful to the Court, is to benefit the class itself. For this reason, I conclude, a departure from the American Rule[3] may be warranted, and equity may support a fee award to an objector, where the efforts of the objector better enabled the Court to act in the interests of the class, even where the suggestions of the objector were not adopted by the Court. Our case law supports this reasoning.[4]

A second premise is important here: a perverse incentive to object could be created if counsel fees are granted in such a situation too liberally or with too much regularity. In fact, it should be a rare occurrence indeed where an objector receives a fee award for proposing, unsuccessfully, that a settlement of a class action be

---

[3] Under the American Rule, followed by the Delaware courts, each litigant is responsible for its own attorney fees. *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) (citation omitted).
[4] *See In re Amsted Indus. Inc. Litig.*, 1988 WL 92736, at *12 (Del. Ch. Aug. 24, 1988), *aff'd sub nom*, *Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279 (Del. 1989).

rejected.

I apply these premises to the following factual scenario: the parties proposed a settlement of merger litigation in which the Plaintiff, on behalf of the stockholder class, proposed to settle for disclosures to the stockholders—already made—in return for a broad release of merger-related claims, known and unknown, where the factual investigation done indicated that potential breach-of-duty litigation was unlikely to be fruitful. The disclosures were of marginal materiality. The proposed settlement, in other words, appeared to be an exchange of little for little. The proposed settlement, moreover, was in line with settlements routinely approved by this Court in the past, but came at a time when the Court's treatment of such settlements was in flux, partly in recognition of the inability of the Court to understand fully what potential claims might exist only to be extinguished by the usual broad release.[5] The presentation of the Objector limned the general problem inherent in this scenario but also advocated against the settlement based upon the specific terms proposed and the investigation undertaken, in a way I explicitly found persuasive.[6] In light of the nature of the proposed settlement, then, and at this particular time of re-examination of the utility to the class of disclosure-only

---

[5] *See generally In re Susser Holdings Corp. S'holder Litig*., C.A. No. 9613-VCG (Del. Ch. Sept. 15, 2015) (TRANSCRIPT); *Acevedo v. Aeroflex Holding Corp*., C.A. No. 9730-VCL (Del. Ch. Jul. 8, 2015) (TRANSCRIPT); *In re Intermune, Inc., S'holder Litig*., C.A. No. 10086-VCN (Del. Ch. Jul. 8, 2015) (TRANSCRIPT).

[6] *See In re Riverbed,* 2015 WL 5458041, at *6.

settlements in return for broad releases of liability, I found the Objector's elucidation of issues helpful in reaching a decision. This is true despite the fact that I found that the proposed settlement was appropriate, a finding made in light of the specific circumstances described here, including that the settlement was entered in accord with what had been standard practice and that facts specific to this case convinced me that harm to the class from the proposed release was particularly unlikely. Since my determinations were made on behalf of the stockholders, and since the presentation of the Objector was helpful in those determinations, the Objector conveyed a benefit to the class, and some fee award is therefore appropriate.

The Objector seeks fees but has not suggested an appropriate amount. Any fee here must be made in light of the factors set out by our Supreme Court in *Sugarland*.[7] These factors include:

> (i) the amount of time and effort applied to the case by counsel for the plaintiffs; (ii) the relative complexities of the litigation; (iii) the standing and ability of petitioning counsel; (iv) the contingent nature of the litigation; (v) the stage at which the litigation ended; (vi) whether the plaintiff can rightly receive all the credit for the benefit conferred or only a portion thereof; and (vii) the size of the benefit conferred.[8]

The most important factor is the benefit conferred. Here, the Objector points to the elucidation of the issues that he argued supported the rejection of the settlement,

---

[7] *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142 (Del. 1980).
[8] *In re Plains Res. Inc*., 2005 WL 332811, at *3 (Del. Ch. Feb. 4, 2005) (citing *Sugarland*, 420 A.2d at 149–50).

which I have found above to have been beneficial to the class. The Objector also suggests that his opposition to the award of an attorney fee to the Plaintiffs worked a benefit on the class. I found a Plaintiffs' fee award warranted, but in an amount less than the Plaintiffs sought. The calculation of such a fee award is a matter with which I was already familiar, however, and the Objector's argument was not helpful in that regard. Thus the benefit to the class was limited to the Objector's arguments in opposition to the settlement itself.

In producing what I must view—in light of my decision to approve the settlement—as a modest benefit to the class, counsel for the Objector necessarily reviewed the record closely, reviewed the proposed settlement and the case law, and drafted briefing in opposition to the settlement. He also presented oral argument. Counsel for the Objector states candidly that he applied more time here than would have been the case had this not been the first such objection for which he advocated, and that the effort expended is not, therefore, a persuasive factor.[9] While the issues underlying the settlement were not novel or difficult, as stated above the framework under which the Court examines such settlements was in something of a state of flux and was ripe for re-examination. Taking these factors, together with the other *Sugarland* factors, into account, a modest fee to the Objector's counsel is called for

---

[9] The Objector's counsel reported that he worked 244 hours on this matter between his retention in May 2015 and the oral argument regarding the settlement held on July 27, 2015. Application for Objector's Attorney's Fees and Expenses, at 14.

in equity.  The Objector is awarded $10,000 in way of his counsel's fee, and in addition, his costs in the amount of $837.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III